**UNITED STATES of America, Appellee,**

v.

**Anthony Russell GUGINO, Defendant–Appellant.**

**No. 95, Docket 88–1178.**

United States Court of Appeals, Second Circuit.

Submitted Aug. 31, 1988.

Decided Oct. 31, 1988.

Patrick J. Brown, Buffalo, N.Y. (LoTempio & Brown, P.C., of counsel), for defendant-appellant.

Rodney O. Personius, Buffalo, N.Y., Asst. U.S. Atty., W.D.N.Y. (Dennis C. Vacco, U.S. Atty., W.D.N.Y., Paul J. Campana, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, Chief Judge, and CARDAMONE and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

Anthony Russell Gugino appeals from a judgment of the United States District Court for the Western District of New York, John T. Elfvin, J., convicting appellant after a jury trial on three counts charging violation of 18 U.S.C. §§ 1029(b)(2), 1029(a)(1) and (2). The first count charged conspiracy to use with intent to defraud, and the other two counts charged such use of, an unauthorized access device and a counterfeit access device. Appellant claims that his conviction under subsection (2) of § 1029(a) was improper. He also argues that the district court should have suppressed identification testimony and should have granted his motion for a new trial. For reasons given below, we affirm the judgment of the district court.

## I.

From the evidence before it, the jury could have found the relevant facts as follows. In July 1986, Anthony Gugino prevailed upon Gary Rampino to forge the signature of Stephen Giardina on the back of a Visa credit card issued in Giardina's name and obtained by Gugino. Gugino told Rampino that he did not want to sign the Visa card because it belonged to a family friend.

Later that month, Gugino and Rampino went to a jewelry store in a shopping mall outside Buffalo, New York in order to purchase a diamond engagement ring with the Visa card. Rampino passed himself off as Stephen Giardina while Gugino played the role of Giardina's future brother-in-law.

When Rampino and Gugino advised the sales clerk, Dorothy Garcia, that they wanted to purchase a diamond ring shown to them and pay for it with the credit card, Garcia informed Rampino that she needed to see some type of identification before she could complete a transaction valued in excess of $1,000. While Rampino went to the parking lot ostensibly to retrieve his driver's license from his car, Gugino remained in the store. When Rampino returned to the jewelry store, he discovered that another employee, Jerome Wenneman, had approved the purchase. Rampino then, in the presence of Gugino, signed both a Visa credit card slip and the store's sales slip using Giardina's name. The two men then left the store with the ring. Although the purchase price of the ring was over $1,100, it was later sold for $400.

In early November 1986, law enforcement officers showed a six-picture photo display separately to the two jewelry store employees who had been involved in the sale of the ring to Rampino and Gugino the previous July. Both Garcia and Wenneman selected Gugino's photograph from the array as one of the participants in the purchase of the diamond ring. At trial, Garcia again identified Gugino as one of the participants in the ring transaction at the jewelry store.

In June 1987, Gugino was indicted in a three-count indictment. Count I charged Gugino with conspiracy to use, with intent to defraud, an unauthorized and counterfeit access device in order to obtain merchandise in excess of $1,000, 18 U.S.C. § 1029(b)(1). Count II charged Gugino with aiding and abetting such use of an unauthorized access device, 18 U.S.C. § 1029(a)(2), and Count III charged Gugino with aiding and abetting similar use of a counterfeit access device, 18 U.S.C. § 1029(a)(1). Before trial, Gugino unsuccessfully moved to suppress identification testimony by Garcia. After the jury returned its verdict of guilty on all three counts, Gugino moved for a judgment of acquittal based upon the alleged perjury of one of the government's witnesses, Salvatore Lauricella, but the district court denied the motion. Judge Elfvin sentenced Gugino to five-year terms of imprisonment on each count to run concurrently, and ordered him to pay restitution of $1,453.00 to the bank that issued the Visa credit card. This appeal followed.

## II.

In Counts II and III of the indictment, appellant was charged with violating subsections (1) and (2) of § 1029(a) of Title 18 of the United States Code. Subsection (1) covers fraudulent use of a *"counterfeit* access device" and subsection (2) covers such use of an *"unauthorized* access device." (Emphasis supplied). The relevant portions of section 1029 are reproduced in the margin.[1] Appellant argues to us that

---

1. Section 1029 provides, in relevant part, as follows:

§ 1029. Fraud and related activity in connection with access devices

(a) Whoever—

(1) knowingly and with intent to defraud produces, uses or traffics in one or more counterfeit access devices;

(2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

(3) knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices; or

(4) knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment;

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

(b)(1) Whoever attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

\* \* \* \* \* \*

(c) The punishment for an offense under subsection (a) or (b)(1) of this section is—

(1) a fine of not more than the greater of $10,000 or twice the value obtained by the offense or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(2) or (a)(3) of this section which does not occur after a conviction for another offense under either such subsection, or an attempt to commit an offense punishable under this paragraph;

(2) a fine of not more than the greater of $50,000 or twice the value obtained by the

the credit card used here was a counterfeit access device and not an unauthorized access device. Appellant claims that subsections (1) and (2) of § 1029(a) are mutually exclusive and that the same access device cannot at the same time be both counterfeit and unauthorized. Thus, although appellant continues to assert that his conviction on Count III was error for other reasons discussed below, he concedes that the Visa card was a counterfeit access device as charged by that count. He contends, however, that because the credit card was not an unauthorized access device his conviction on Count II must be set aside.

■ Section 1029 was enacted in 1984 as part of a congressional effort to plug loopholes in federal criminal law in the area of debit and credit cards and to curb the rapid increase in counterfeiting and related fraud with regard to those devices. See S.Rep. No. 98–368, 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3647–58; H.R.Rep. No. 98–894, 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Admin. News 3689, 3699–706. Subsection (e) of section 1029, see note 1, contains the following definitions:

> (2) the term "counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device;
>
> (3) the term "unauthorized access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

While the definitions contained in these two sections differ, it does not follow that the same access device cannot be both unauthorized and counterfeit at the same time.

■ The Visa card used by Gugino and Rampino here was obviously an "unauthorized" card in the sense that neither Gugino nor Rampino had authority from Giardina to use it, and it was either "lost, stolen ... or obtained with intent to defraud." Had Giardina already signed the card on the back when Gugino acquired it, as Rampino later fraudulently did, there might have been an argument that the Visa card was not also a "counterfeit." But that is not what occurred here. Because Giardina's signature on the back was forged, the card was counterfeit, as appellant concedes. Used by Gugino and Rampino, the card was also unauthorized.

■ Appellant's argument is somewhat similar to a claim of multiplicity, which is "the charging of a single offense in more than one count" of an indictment. *United States v. Israelski*, 597 F.2d 22, 24 (2d Cir.1979). In that context, under the relevant precedents the basic inquiry is whether Congress intended to create multiple punishments for conduct that violates two statutory provisions, and the starting point for analysis is always the statutory language. *Albernaz v. United States*, 450 U.S. 333, 336–42, 101 S.Ct. 1137, 1140–44, 67 L.Ed.2d 275 (1981); *United States v. Marrale*, 695 F.2d 658, 662 (2d Cir.1982), cert. denied, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983). If the offenses are

offense or imprisonment for not more than fifteen years, or both, in the case of an offense under subsection (a)(1) or (a)(4) of this section which does not occur after a conviction for another offense under either such subsection, or an attempt to commit an offense punishable under this paragraph; and

(3) a fine of not more than the greater of $100,000 or twice the value obtained by the offense or imprisonment for not more than twenty years, or both, in the case of an offense under subsection (a) of this section which occurs after a conviction for another offense under such subsection, or an attempt to commit an offense punishable under this paragraph.

\* \* \* \* \* \*

(e) As used in this section—

(1) the term "access device" means any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

(2) the term "counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device;

(3) the term "counterfeit access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud;

set forth in different statutes or in distinct sections of a statute, and each provision or section unambiguously sets forth a punishment for its violation, then courts generally infer that Congress intended to authorize multiple punishments. A court must then determine whether each offense requires separate proof of a fact that the other does not, *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and, if that is the case, the presumption continues unless the applicable legislative history discloses a contrary congressional intention.

■ Since the district judge imposed concurrent five-year prison terms on all counts here, the question of multiple punishment is not directly raised. Nevertheless, the analysis just set forth is helpful and indicates that there is no multiplicity on the facts before us. Subsections (1) and (2) of § 1029(a) are separate and distinct portions of the statute, each prohibiting separate conduct—the former with respect to a counterfeit access device and the latter with respect to an unauthorized access device. Also, the statute expressly sets forth distinct and different punishments for the use of an unauthorized access device and a counterfeit access device. See §§ 1029(c)(1) and (c)(2), and note 1. Moreover, in the context now before us, the conduct sought to be punished requires different proof—criminal use of a counterfeit device requires the forgery of a signature, while criminal use of an unauthorized device requires that the device be obtained in an improper manner. Finally, the legislative history does not reveal an intention to preclude multiple punishments.

Therefore, on these facts we see no persuasive reason why appellant could not be charged and convicted under both subsections (1) and (2) of § 1029(a). The only appellate authority we have been able to find involving a similar definitional problem under this statute supports this view. *United States v. Brewer*, 835 F.2d 550, 553–54 (5th Cir.1987). We therefore reject the argument that the conviction on Count II must be set aside.

### III.

Gugino's remaining arguments do not require much discussion. Indeed, were they the only ones before us, we would have disposed of this appeal by order, since the issues raised are simple to resolve and amply covered by precedent.

■ Gugino argues that the identification testimony given by Dorothy Garcia at the suppression hearing prior to trial was so at odds with the testimony of the other jewelry store employee, Jerome Wenneman, as to render her testimony unreliable as a matter of law, that she misidentified appellant and that she should not have been allowed at trial to identify Gugino again. We do not agree. As the government points out, Gugino concedes that Garcia's pretrial identification of him from a photo spread was not the result of suggestive procedures. Therefore, there can be no valid claim that her in-court identification was "tainted." See *United States v. Nersesian*, 824 F.2d 1294, 1318 (2d Cir.), cert. denied, — U.S. —, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). Appellant appears to recognize this, but nevertheless contends that because of the inconsistencies referred to above the judge should have excluded Garcia's in-court identification. However, the alleged inconsistencies "go not to the admissibility of [Garcia's] in-court identification, but to the weight to be given to it." See *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), and the judge did not err by allowing the jury to decide whether to believe her.

■ Finally, Gugino contends that the district court should have granted him a new trial because there was new evidence in the form of an affidavit from one Rochelle Reisdorf that one of the government's witnesses, Salvatore Lauricella, had perjured himself at trial. Lauricella testified that Gugino admitted to him that Gugino had used a stolen credit card to buy a diamond ring. Under cross-examination, Lauricella denied ever using the Visa credit card at issue here. The Reisdorf post-verdict affidavit asserts that this latter testi-

mony was false. Gugino argues that even though the government was unaware of the alleged perjury, he is entitled to a new trial. We disagree. The record shows that Lauricella and Gugino were friends. Even if Lauricella did use the card on some occasions—and we do not suggest that he did—it does not follow that Gugino did not use it in the ring transaction at the jewelry store. Moreover, the *Reisdorf* affidavit is only cumulative with respect to Lauricella's credibility, which was open to ample attack by appellant's counsel. The applicable test under *United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir.1975), cert. denied, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976), is whether "the jury probably would have altered its verdict if it had had the opportunity to appraise the impact of the newly discovered evidence." The district judge obviously concluded that under this test the jury would not have done so. We cannot say that he was wrong.

The judgment of the district court is affirmed.