UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2022

(Argued: September 14, 2022    Decided: September 21, 2023)

Docket No. 21-1782

———————————

UNITED STATES OF AMERICA,
*Appellee*,

v.

BRANDEN L. DAVIS,
*Defendant-Appellant.*

———————————

Before:        SACK and PARK, *Circuit Judges.*[*]

Defendant-appellant Branden Davis pleaded guilty in the United States District Court for the Western District of New York to unlawful possession of a firearm and ammunition after previously having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court (Frank P. Geraci, Jr., *J.*) determined that Davis's recommended range of imprisonment under the Sentencing Guidelines was 15 to 21 months.  On July 7, 2021, the court nevertheless sentenced Davis principally to an above-Guidelines sentence of 48 months of imprisonment.  Davis argues that his sentence was both procedurally and substantively unreasonable because, *inter alia*, the district court failed to adequately explain its rationale for Davis's sentence and because the district court's stated justifications were insufficient to support the sentence imposed. For the reasons set forth below, we disagree.  We therefore

AFFIRM the judgment of the district court.

---

[*] Judge Rosemary S. Pooler, who was a member of the original panel in this case, died before this opinion issued.  This appeal is decided by the two remaining members of the panel, who are in agreement.  *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b).

TIMOTHY P. MURPHY, Assistant Federal Public Defender, *for* Marianne Mariano, Federal Public Defender for the Western District of New York, Buffalo, NY, *for Defendant-Appellant*;

SEAN C. ELDRIDGE, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Rochester, NY, *for Appellee.*

SACK, *Circuit Judge*:

On March 1, 2021, defendant-appellant Branden Davis pleaded guilty in the United States District Court for the Western District of New York to unlawful possession of a firearm and ammunition after previously having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court (Frank P. Geraci, Jr., *J.*) determined that Davis's recommended range of imprisonment under the Sentencing Guidelines was 15 to 21 months.  On July 7, 2021, the court nevertheless sentenced Davis principally to an above-Guidelines sentence of 48 months of imprisonment.  Davis argues that his sentence was both procedurally and substantively unreasonable because, *inter alia*, the district court failed to adequately explain its rationale for the sentence it imposed on Davis and because the district court's stated justifications were insufficient to support the sentence imposed.  We disagree with Davis and conclude that the district

court appropriately exercised its substantial discretion when determining his sentence.  We therefore affirm the judgment of the district court.

## BACKGROUND

On August 6, 2020, defendant-appellant Branden Davis was driving a vehicle in a residential area of Rochester, New York.  Officers with the Rochester Police Department attempted to conduct a traffic stop of Davis's vehicle, but he pulled onto a curb, exited his vehicle, and fled.  While running away, Davis discarded a black handbag that police then seized.  The police apprehended Davis and took him into custody.  They later determined that the black bag contained, among other things, a loaded 9mm semi-automatic handgun and marijuana.

This was not Davis's first encounter with law enforcement.  In 2005, the United States District Court for the Western District of New York sentenced Davis to 70 months of imprisonment after convicting him of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  After his release in 2010, Davis twice violated his conditions of supervised release and was sentenced to 18 months of incarceration in 2012.  Davis's record also reflects various other prior convictions, including multiple convictions for possession of

controlled substances, namely cocaine and marijuana; a conviction for driving

while ability impaired; and several convictions for driving without a license.

With respect to the instant offense, Davis agreed to waive indictment and

was charged via information in the United States District Court for the Western

District of New York with one count of unlawfully possessing a semi-automatic

handgun after having been convicted of a felony in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2). Davis pleaded guilty to this offense on March 1, 2021.

His plea agreement recognized that the maximum possible sentence for his crime

included an imprisonment term of 10 years. The plea agreement also reflected

Davis's and the government's understanding that, depending on whether the

district court decided that specific adjustments applied, the Sentencing

Guidelines would recommend an imprisonment sentence of either 15 to 21

months or 18 to 24 months. But both Davis and the government agreed that the

district court would "not [be] bound by the Sentencing Guidelines" when

determining Davis's sentence. App'x at 13.

The district court held Davis's sentencing hearing on July 7, 2021. The

government asked the court to sentence Davis to an above-Guidelines sentence

of at least 70 months of imprisonment. It noted that when Davis was convicted

of violating 18 U.S.C. § 922(g)(1) in 2005—the same statute he pleaded guilty to violating in this case—he received a sentence of 70 months of imprisonment. App'x at 76 (arguing that "a sentence that is at least in line with the sentence he received 17 years ago for the exact same crime is both appropriate and necessary"). The government also discussed the rising danger of guns in Rochester. *See id.* ("The gun violence in the city is on the increase, and both this community and this defendant need to know that illegal gun possession simply won't be tolerated."). The government did not discuss this rise in local crime in its presentencing memorandum.

Davis, through counsel, proposed on the other hand a sentence of 15 months of imprisonment. Davis admitted that gun crimes were "on the rise in the city and elsewhere" and agreed that "the Court does certainly need to take that into consideration." App'x at 78. However, he contended that "the recent spike in gun crimes and the violence in the city" occurred several months after his criminal conduct. *Id.* Davis also argued that the 70 months of incarceration that he received in 2005 were "draconian" and did "more harm than good." *Id.* at 78–79.

After considering the parties' arguments, the district court held that the lower Guidelines range—15 to 21 months of imprisonment instead of 18 to 24—applied to Davis's case. The district court reached this conclusion after determining that the reckless-endangerment-during-flight enhancement described in Chapter 3, Part C, Section 1.2 of the Sentencing Guidelines Manual was inapplicable to Davis's case because Davis's actions did not pose an imminent and immediate threat to others. App'x at 69 ("[Davis's flight from the police] was clearly a dangerous situation, but I do not believe it rises to the level of reckless endangerment in which a two level increase should apply for reckless endangerment during flight . . . ."). The court then discussed Davis's "long" criminal history and the "concerning" fact that Davis had already been convicted of violating the same statute. *Id.* at 85. In part because of Davis's criminal history and the nature of his offense, the district court concluded that a Guidelines sentence of 15 to 21 months of incarceration was inadequate.

The district court further justified its decision to deviate from the Guidelines, commenting:

> And also I think deterrence is now probably even [a] stronger [consideration] than it was in the past. You can't pick up the newspaper or turn on the TV in this community without somebody running around with a gun and shooting somebody.

And the word has to get out there that if you decide to be in the city with a loaded gun and run around the city, there's consequences to that and there's serious consequence to that.

App'x at 86.

The district court expressed particular concern about what it described as a recent "spike in violence in the city." App'x at 86. The court agreed with Davis's counsel that Davis's conduct "occurred probably prior to" the "spike." *Id.* Nevertheless, the court said that it had "to be very, very serious and send a very clear message that [the recent violence would not] be tolerated." *Id.* The court then sentenced Davis to an above-Guidelines sentence of 48 months of imprisonment to be followed by three years of supervised release.

On July 21, 2021, Davis timely appealed the district court's judgment.

## DISCUSSION

### I. Standard of Review

This Court reviews the sentences that district courts impose for "reasonableness." *United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir. 2012) (citation omitted). This standard is "'a particularly deferential form of abuse-of-discretion review' that we apply both to the procedures used to arrive at the

sentence (procedural reasonableness) and to the length of the sentence

(substantive reasonableness)." *Id.* (citation omitted).

## II. Analysis

Davis contends that the sentence the district court imposed was both

procedurally and substantively unreasonable. Neither claim has merit.

A. Procedural Reasonableness

Davis argues that his sentence was procedurally unreasonable because the

district court failed to adequately explain its reasons for imposing an

imprisonment sentence above the Guidelines' recommendation. A district

court's failure to adequately explain its chosen sentence can render the sentence

procedurally unreasonable. *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013)

(per curiam). Indeed, a district court must, "at the time of sentencing," "state in

open court the reasons for its imposition of the particular sentence." 18 U.S.C.

§ 3553(c).

But we have noted that "the 'statement' requirement of § 3553(c) sets a low

threshold." *United States v. Rosa*, 957 F.3d 113, 119 (2d Cir. 2020). A district court

"need not engage in a prolonged discussion of its reasoning." *United States v.*

*Robinson*, 799 F.3d 196, 202 (2d Cir. 2015). A district court is also not required "to

engage in the utterance of 'robotic incantations'" in order for the court's sentence to be procedurally reasonable. *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (citation omitted). Instead, "a brief statement of reasons will generally suffice where the parties have addressed only 'straightforward, conceptually simple arguments' to the sentencing judge." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (citation omitted). "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). Determining what is required in any particular case is a matter firmly committed to the district court's discretion. *See id.* ("[T]he law leaves much, in this respect, to the judge's own professional judgment.").

Moreover, when a defendant fails to object to an alleged sentencing error before the district court, we will ordinarily consider any later objections forfeited on appeal unless the defendant can meet the plain-error standard. *United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007). This rule applies to a district court's alleged failure to adequately explain its reasons for imposing a particular sentence and to the related claim that a district court did not comply with section 3553(c)'s statement requirement. *Rosa*, 957 F.3d at 117; *Villafuerte*, 502 F.3d at 211.

Accordingly, if a defendant fails to raise these objections at sentencing, we may

deem the objections forfeited unless the defendant can demonstrate plain error.

*See Villafuerte*, 502 F.3d at 207.  To meet the plain-error standard, a defendant

must establish four elements:

> (1) there is an error; (2) the error is clear or obvious, rather than subject
> to reasonable dispute; (3) the error affected the appellant's substantial
> rights; and (4) the error seriously affects the fairness, integrity or
> public reputation of judicial proceedings.

*Rosa*, 957 F.3d at 117–18 (citation omitted).

We understand Davis to advance two arguments in support of his

contention that the district court failed to adequately explain its reasons when

determining his sentence.  Davis's first argument is that the court failed to spend

sufficient time "substantively analyzing" its reasons for selecting an above-

Guidelines sentence.  Appellant's Br. at 11; *see also id.* ("[N]one of [the district

court's reasons for selecting Davis's sentence were] adequately explained at

sentencing.").  Davis also claims that the district court erred by increasing his

sentence in response to a perceived rise in local crime in part because the district

court did not inform the parties in advance that the court thought that the rise in crime was relevant to Davis's case.[1]

Davis did not raise either of these objections at sentencing. And although he now argues that he "made it clear" that the court failed to afford him sufficient advance notice of the court's intention to consider local crime rates when sentencing Davis, Reply Br. at 4–5, the record shows otherwise. At sentencing, the government argued that the court should sentence Davis to 70 months of imprisonment in part because of rising local crime rates, and the court then granted Davis the opportunity to respond. Not only did Davis, through counsel, agree "that gun crimes [we]re on the rise in the city and elsewhere," Davis also agreed that "the Court d[id] certainly need to take that into consideration" when determining his sentence. App'x at 78. Davis never objected that the court failed to grant him sufficient advance notice of the court's intention to consider the crime data. Hence, to the extent that Davis raised any objection to the district court's consideration of the crime data, Davis failed to raise his procedural objection with sufficient specificity to preserve his claim for

---

[1] Davis further asserts that the district court gave the purported rise in local crime "too much weight" when determining his sentence, which resulted in the sentence being substantively unreasonable. Appellant's Br. at 13. We consider this separate argument in the next section.

appellate review. *Cf. United States v. Jenkins*, 43 F.4th 300, 302 (2d Cir. 2022)

(explaining, in the context of jury instructions, that an objection must be

sufficiently specific to preserve a claim); *Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d

Cir. 1989) ("Specificity in an evidentiary objection is also required in federal

courts to preserve an issue for appeal."). We will accordingly review both of

Davis's objections to the procedural reasonableness of his sentence under the

plain-error standard of review.

Both of Davis's claimed procedural errors—that the district court's

reasoning for its sentence was too cursory and that the district court did not give

him sufficient advance notice of its intention to consider local crime data when

determining his sentence—fail under the plain-error standard because neither

error, assuming the district court did err, "is clear or obvious." *Rosa*, 957 F.3d at

117 (citation omitted).

Regarding the first, as explained above, the district court possessed

substantial discretion when determining how much elaboration was needed to

sufficiently explain the reasons for Davis's sentence. *See Rita*, 551 U.S. at 356.

While Davis faults the district court for failing to "substantively analyz[e]" the

district court's reasons for sentencing Davis principally to an above-Guidelines

sentence of 48 months of imprisonment, Appellant's Br. at 11, a review of the record refutes Davis's argument. At sentencing, the district court engaged in a thorough discussion of what Davis's recommended sentence under the Guidelines should be; extensively reviewed Davis's "long" and "concerning" criminal history, App'x at 84–85; adopted Davis's Presentence Investigation Report; and explained which sentencing factors in particular required the district court, in its opinion, to sentence Davis to an above-Guidelines imprisonment term. It is not "clear or obvious" to us that further elaboration was required. *Rosa*, 957 F.3d at 117 (citation omitted).

Second, the district court did not clearly err by failing to give Davis advance notice of its intention to consider local crime data when determining an appropriate sentence. Davis relies on *Cavera* for his claim that advance notice was required. There, we considered whether a district court erred by imposing an above-Guidelines sentence upon a defendant convicted of a firearms-trafficking offense in part because of the court's "finding that the Sentencing Guidelines failed to take into account the need to punish more severely those who illegally transport guns into areas like New York City." *Cavera*, 550 F.3d at 184. Before sentencing, the district court informed the parties that it was

considering an above-Guidelines sentence, referred the parties to articles on local variation in federal sentencing, and adjourned the proceedings so that the parties could prepare appropriate submissions. *Id.* at 185, 194. In Davis's case, however, the district court merely permitted the parties to discuss at sentencing the issues they thought were relevant, including the rise in local crime, and did not offer the parties any prior notice that the court itself considered the rise relevant.

Although the district court admittedly afforded Davis less advance notice of the factors that the district court found relevant when sentencing Davis than the defendant received in *Cavera*, Davis has nonetheless failed to show that the district court thereby committed clear procedural error. As an initial matter, while Davis claims that the district court failed to comply with "the *Cavera* standard," Reply Br. at 5, the *Cavera* court did not hold that the district court's actions set any standard for procedural reasonableness. The *Cavera* court did conclude that the district court's actions were sufficient to render the defendant's sentence procedurally reasonable, *see Cavera*, 550 F.3d at 194, but that is not equivalent to a holding that the district court's actions were necessary.

It is also important that the district court's decision to sentence Davis to an above-Guidelines imprisonment term was a variance from the Guidelines'

recommendation, not a departure. "[A] variance is a modification of the applicable Guidelines sentence" that a district court imposes based upon its consideration of the Guidelines factors. *United States v. Stewart*, 590 F.3d 93, 137 n.32 (2d Cir. 2009). A departure, on the other hand, "is a term of art under the Guidelines" that refers to a non-Guidelines sentence that a district court imposes in accordance with a policy statement outlined in the Sentencing Guidelines. *Id.* (citation omitted); *see also* OFFICE OF LEGAL COUNSEL, U.S. SENT'G COMM'N, PRIMER ON DEPARTURES AND VARIANCES 1 (2023), https://www.ussc.gov/sites/default/files/pdf/training/primers/2023_Primer_Departure_Variance.pdf ("Departures are sentences outside of the guideline range authorized by specific policy statements in the *Guidelines Manual*. . . . Variances are sentences outside of the guideline range that are not imposed within the guidelines framework."). Because Davis's above-Guidelines sentence was a variance, not a departure, the Federal Rules of Criminal Procedure did not require the district court to give the parties reasonable notice of its intent to impose it. *See* FED. R. CRIM. P. 32(h) ("Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the

15

parties reasonable notice that it is contemplating such a *departure*." (emphasis added)); *Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("[R]ule [32(h)] does not apply to . . . variances by its terms."); *United States v. Sealed Defendant One*, 49 F.4th 690, 697 (2d Cir. 2022) (explaining that the "upshot" of the distinction between departures and variances is that under the Federal Rules of Criminal Procedure, a "district court ha[s] no duty to give advance notice of [its intent to impose a] variance").

Moreover, even if due process or some related component of our procedural reasonableness requirement entitled Davis to reasonable notice of the district court's intent to vary from the Guidelines' recommendation based on its consideration of the recent rise in gun violence in Davis's community,[2] the notice that Davis received in this case was sufficient. As explained above, the district court did not impose Davis's sentence until after giving him an opportunity to

---

[2] We need not and do not decide that issue today. *Cf. Irizarry*, 553 U.S. at 715 (stating that "[s]ound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues" without expressly holding that due process requires such a practice); *United States v. Hatcher*, 947 F.3d 383, 391 (6th Cir. 2020) ("One way in which a sentence may be procedurally unreasonable is when 'the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise.'" (alteration in original) (citation omitted)); *United States v. Thompson*, 777 F.3d 368, 377–78 (7th Cir. 2015) (suggesting that *Irizarry* described a "'best practice,' which is different from a required practice").

respond to the government's arguments at sentencing, including the government's new argument that the district court should impose a stricter sentence due to rising local crime rates. Davis attempted to rebut the government's claim by arguing that the spike in crime occurred after his criminal conduct, an argument with which the district court partially agreed. The record thus demonstrates that Davis both had an adequate opportunity to respond to the government's new argument and, indeed, made an effective response. Davis has also not satisfactorily identified what additional contentions he would have made in response to the government's argument about rising crime rates had he received additional notice that the court found the argument persuasive. *Cf.* App'x at 78 (Davis agreeing "that gun crimes are on the rise in the city and elsewhere, and the Court does certainly need to take that into consideration"). In light of these facts, and sentencing's "fluid and dynamic" nature, *Irizarry*, 553 U.S. at 715 (citation omitted), where the district "court itself may not know until the end whether a variance will be adopted, let alone on what grounds," *id.* (citation omitted), we conclude that Davis has not shown that the district court committed clear procedural error by not giving the parties advance notice of its intent to consider rising local crime rates when determining Davis's sentence.

In sum, because Davis did not raise either of his claimed procedural errors at sentencing and has not shown that the district court plainly erred, he has forfeited his objections to his sentence's procedural reasonableness.

B.      Substantive Reasonableness

Davis contends, moreover, that the 48-month imprisonment sentence that the district court imposed was substantively unreasonable.  This argument also fails.

"A district court errs substantively if its sentence 'cannot be located within the range of permissible decisions.'"  *Chu*, 714 F.3d at 746 (citation omitted).  We do not review a sentence's substantive reasonableness to "substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case."  *Cavera*, 550 F.3d at 189.  Instead, we will vacate a sentence for substantive unreasonableness "only in exceptional cases."  *Id*.  These "few cases" include those where the sentence may be procedurally correct but affirming it "would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law."  *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).  "In other words, our review of a criminal

18

sentence 'amounts to review for abuse of discretion.'" *Chu*, 714 F.3d at 746 (citation omitted).

Davis argues that the district court's sentence was substantively unreasonable for two reasons. First, Davis claims that the district court's decision that Davis's actions did not constitute reckless endangerment during flight "directly contradicted" the district court's concerns about the dangers Davis's actions posed to the community and the district court's ultimate decision to impose an above-Guidelines sentence. Appellant's Br. at 12–13. Second, Davis argues that the district court gave rising rates of local crime "too much weight" when determining his sentence. *Id.* at 13.

Davis's first argument is easily refuted. The Sentencing Guidelines Manual instructs district courts to enhance a defendant's offense level by two if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S. SENT'G GUIDELINES MANUAL § 3C1.2 (U.S. SENT'G COMM'N 2021). The district court determined that Davis's actions did not justify this enhancement because, *inter alia*, Davis fled from the police at a time late at night in which no civilian bystanders were around and the police quickly apprehended him. As the district

19

court's reasoning makes clear, the issue of whether Davis's flight from the police justified the reckless-endangerment enhancement is distinct from the issue of whether Davis's sentence for his firearms offense was appropriate. The former question is resolved by analyzing Davis's conduct on the night of his arrest whereas the latter question requires balancing the various sentencing factors and considering Davis's "long" criminal history, including the "concerning" fact that Davis had previously been convicted of exactly the same crime. App'x at 85. In short, nothing about the district court's decision not to apply the reckless-endangerment enhancement to Davis's case suggests that the district court acted unreasonably by sentencing Davis to an above-Guidelines imprisonment term.

The refutation of Davis's second argument is more complicated. Davis argues that the district court abused its discretion by relying too heavily on the need to deter a recent rise in local gun violence. *See* Appellant's Br. at 23 ("The concept of general deterrence (under § 3553(a)(2)(B)) is a thin reed that does not support a sentence double the recommended Guidelines range."). Davis argues that two related aspects of the court's reasoning were particularly problematic. Davis's first concern is that the court agreed that the rise in crime occurred after his criminal conduct. *See id.* at 13 ("Considering circumstances occurring

subsequent to the offense conduct flies in the face of imposing a sentence that is sufficient but no greater than necessary to achieve the otherwise legitimate goals of § 3553(a)(2).").  Davis also objects to the fact that the court's consideration of local crime rates arguably increased his sentence as a result of the actions of others with which he was not involved.  *See id.* at 24 ("Davis accepted a guilty plea based on an acknowledgement of his *own* wrong doing [*sic*] but then was sentenced based on *other's* misconduct." (internal citation omitted) (emphasis in original)).

Before addressing Davis's arguments more directly, three observations:

First, although Davis's briefs contain many statements that implicitly question the accuracy of the district court's determination that local gun violence rates were rising in Davis's community, *see, e.g.*, Appellant's Br. at 12 (criticizing the court for relying too heavily on "anecdotal information"), Davis never explicitly argues that the district court's conclusion about crime rates was mistaken.  Moreover, during sentencing, Davis agreed that "gun crimes [we]re on the rise in the city and elsewhere."  App'x at 78.  Davis has therefore waived any argument to the contrary.  *See United States v. Miller*, 328 F. App'x 33, 36 (2d Cir. 2009) (summary order) (defendant waived ability to challenge on appeal loss

21

calculation in presentence report by stating at sentencing that all parties agreed

on the loss calculation); *see also Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010)

("[T]he law can presume that an individual who, with a full understanding of his

or her rights, acts in a manner inconsistent with their exercise has made a

deliberate choice to relinquish the protection those rights afford.").

Second, for the same reasons, Davis has waived the ability to argue that

the rise in local crime could not play *any* role in the district court's determination

of Davis's sentence. Davis agreed that the court needed to take the rise "into

consideration." App'x at 78. The issue here is whether the district court abused

its discretion by giving the local crime spike "too much weight," Appellant's Br.

at 13, not whether the court was precluded from considering the increase

altogether.

There is in any event nothing inherently impermissible about considering

the need to deter local crime when determining an appropriate sentence. *See*

*Cavera*, 550 F.3d at 195 ("The environment in which a crime was perpetrated

may, in principle, inform a district court's judgment as to the appropriate

punishment in any number of ways."); *United States v. Politano*, 522 F.3d 69, 71–72

(1st Cir. 2008) (affirming an above-Guidelines sentence that the district court

imposed partly in response to what the district court called "an epidemic of

handgun violence in communities within this district" (citation omitted)).[3] The

court was also not precluded from factoring the spike in local crime into its

sentencing calculus because it occurred after Davis was arrested. The Guidelines

suggest that courts should consider the sentencing factors "in effect on the date

the defendant is sentenced," not the date the defendant committed his or her

crime. 18 U.S.C. § 3553(a)(4)(A)(ii). Moreover, it was "established long before

the advent of the Guidelines that [a] sentencing court [may] properly take into

account . . . information known to it so long as the defendant ha[s] an

opportunity to respond in order that the court not rely on misinformation."

*United States v. Concepcion*, 983 F.2d 369, 387–88 (2d Cir. 1992) (internal citation

omitted). Davis was given an opportunity to respond to the government's

---

[3] We also note that the district court's concern with rising rates of gun violence in Davis's community is different from the *Cavera* district court's view that the Guidelines understated the harms of trafficking firearms into urban areas like New York City. *See Cavera*, 550 F.3d at 185–86. The *Cavera* district court increased the defendant's sentence as a result of a more general policy disagreement with how the Guidelines applied to urban areas. *See id.* at 185 (noting that the district court concluded that "the Guidelines range did not adequately meet the 'crying need to do what can be done to deter gun trafficking into the large metropolitan area[s] of this country.'" (alteration in original) (citation omitted)). The district court in this case, however, increased Davis's sentence in part in response to a change in the specific community where Davis committed his crime.

argument about rising local crime rates and agreed that the rates were rising and that the court needed to take that into consideration.

And while the district court's recognition of the crime spike did arguably result in Davis receiving a more serious sentence due to others' misdeeds, that does not mean that Davis's sentence was inherently unreasonable. The Guidelines require district courts to consider the need for their sentences "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). This requirement in turn requires courts to factor in the need for a sentence to provide adequate general deterrent value. *Politano*, 522 F.3d at 74 ("The § 3553(a) factors expressly provide for consideration of general deterrence . . . ."). General deterrence, which *Black's Law Dictionary* defines as "[a] goal of criminal law generally, or of a specific conviction and sentence, to discourage people from committing crimes," *Deterrence*, BLACK'S LAW DICTIONARY (11th ed. 2019), "is about preventing criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant," *Politano*, 522 F.3d at 74. Thus, not only was the district court permitted to consider the actions of others when sentencing Davis; the Guidelines arguably required it to do so.

But concluding that the district court did not act improperly by referencing local crime rates when sentencing Davis is not the same as concluding that Davis's sentence was ultimately reasonable. Our review of a sentence's substantive reasonableness "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). The imprisonment sentence in this case, 48 months, is more than double the length of the Guidelines' high-end recommendation of 21 months. While the fact that a sentence deviates from the Guidelines' recommendations does not create any presumption of unreasonableness, *id.*, a district court must support its decision to deviate from the Guidelines with a justification that "is sufficiently compelling to support the degree of the variance," *id.* at 50.

Third, although Davis implies that the district court sentenced him to an above-Guidelines sentence solely in order to attempt to deter local crime, *see, e.g.*, Appellant's Br. at 15 ("[T]he prison term was more than doubled, based not on the appellant's dangerousness, but on that of *others*." (emphasis in original)), the district court's reasoning was more multi-faceted and nuanced. When determining his sentence, the district court considered, among other things, the

seriousness of Davis's offense and the fact that he "fled from the police and discarded a loaded weapon on the city street," App'x at 84–85; many aspects of Davis's criminal record, including the fact that Davis was convicted of the same crime in 2005; and Davis's history of substance abuse problems.  Contrary to Davis's suggestions, Davis was not sentenced to an above-Guidelines sentence solely because of the district court's desire to deter a local spike in crime.

Thus, Davis objects to the extent to which the district court emphasized the need to deter others from committing crimes when determining his sentence. But the district court relied mostly on other considerations, and "[t]he weight to be afforded any sentencing factor 'is a matter firmly committed to the discretion of the sentencing judge and is beyond our review, so long as the sentence ultimately imposed is reasonable.'"  *United States v. Bleau*, 930 F.3d 35, 42 (2d Cir. 2019) (per curiam) (citation omitted); *see also United States v. Roberts*, 269 F. App'x 121, 121–22 (2d Cir. 2008) (summary order) ("[Defendant] argues that the district court erred by . . . placing too much emphasis on general deterrence.  The record shows, however, that . . . the weight it gave to deterrence of similar crimes was well within its discretion.").

To hold that Davis's sentence was not ultimately reasonable, we would need to conclude that the sentence he received was "shockingly high." *Rigas*, 583 F.3d at 123. Davis argues that his sentence meets that standard because, *inter alia*, he had a difficult upbringing, completed many rehabilitative program hours while in prison, and does not have a lengthy history of violence.[4] These facts weigh in Davis's favor and likely were part of the district court's reasons for not sentencing Davis to a 70-month imprisonment term as the government requested and as Davis received when he was convicted of the same offense in 2005. But they are not strong enough to demonstrate that the district court abused its discretion when sentencing Davis to a 48-month imprisonment term. *See Broxmeyer*, 699 F.3d at 289 (explaining that the "particular weight to be afforded aggravating and mitigating factors 'is a matter firmly committed to the discretion of the sentencing judge'" (citation omitted)). Davis's past conduct—particularly the fact that he had previously been convicted of the same offense—and the district court's need to impose a sentence that was sufficient but not greater than necessary to achieve the goals of sentencing justify the sentence imposed here.

---

[4] Many of the facts supporting these arguments were noted in Davis's Presentence Investigation Report, which the district court adopted at sentencing.

*See United States v. Feaster*, 833 F. App'x 494, 496, 498 (2d Cir. 2020) (summary

order) (affirming a 60-month imprisonment sentence even though the Guidelines

recommended only 27–33 months of imprisonment for a defendant who, like

Davis, violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2)).

In sum, because the district court did not commit any plain procedural

error when imposing Davis's sentence and because Davis's sentence does not

represent one of those "exceptional cases where the trial court's decision 'cannot

be located within the range of permissible decisions,'" *Cavera*, 550 F.3d at 189

(citation omitted), Davis's appeal fails.

## CONCLUSION

We have considered Davis's remaining arguments on appeal and conclude

that they are without merit. For the foregoing reasons, we AFFIRM the

judgment of the district court.