24-211-cr
*United States v. Benreuben*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                            24-211-cr

ISHMAEL BENREUBEN, AKA SEALED
DEFENDANT 1,

*Defendant-Appellant*.

———————————————————————

FOR APPELLEE:               Daniel Roque, Special Assistant United States Attorney, and Jacob R. Fiddelman, Assistant United States Attorney, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:   Michelle Anderson Barth, The Law Office of Michelle Anderson Barth, Burlington, Vermont.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on January 12, 2024, is **AFFIRMED**.

Defendant-Appellant Ishmael Benreuben appeals from the district court's judgment of conviction following his guilty plea, without a plea agreement, to: (1) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 ("Count One"); (2) bank fraud, in violation of 18 U.S.C. § 1344 ("Count Two"); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) ("Count Three"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Benreuben's convictions arose from his participation with others, between September 2021 and March 2022, in a scheme to alter payee information and dollar amounts, as well as forge signatures, on stolen checks, deposit the checks into various bank accounts, and then withdraw the proceeds from the accounts in which such checks were deposited. Specifically, the checks were stolen from the mail by a co-conspirator, who was an employee of the United States Postal Service. Benreuben doctored the stolen checks, using a VersaCheck HP Deskjet printer to alter the payee names and payment amounts after the original information had been removed. After the altered and forged checks were deposited into the bank accounts, Benreuben and others withdrew money from the accounts through ATM withdrawals, teller withdrawals, and checks before the bank detected the fraud. As part of the scheme, Benreuben also used the personal information and identification of other individuals to gain access to various individuals' bank accounts. On October 10, 2023, Benreuben pled guilty to all three counts in the indictment without a plea agreement.

In advance of Benreuben's sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated Benreuben's advisory range under the United States Sentencing Guidelines (the "Sentencing Guidelines" or "Guidelines"). With respect to the offense level, the PSR stated that: the base offense level for Counts One and Two was seven, pursuant to U.S.S.G. § 2B1.1(a)(1); a fourteen-level loss-amount enhancement applied, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), based on an intended loss amount of $760,348.02; a two-level enhancement applied for possession of device-making equipment because the check printer that Benreuben possessed was used to create access devices, pursuant to U.S.S.G. § 2B1.1(b)(11)(A); a four-level enhancement applied because Benreuben had been a leader or organizer of criminal activity involving five or more participants or that was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(a); and a three-level decrease applied for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Based upon those determinations, the PSR calculated the total offense level to be 24, which, with criminal history category V, resulted in an advisory Guidelines range of 92 to 115 months' imprisonment for Counts One and Two, to be followed by a consecutive 24-month term of imprisonment on Count Three.[1]

Benreuben was sentenced on January 10, 2024. In his pre-sentencing submissions, Benreuben challenged certain aspects of the Guidelines calculation, namely, the use of intended loss, rather than actual loss;[2] the leadership-role enhancement; and the criminal history calculation.

---

[1] The PSR does not include Count Three in the Guidelines calculation because, as required by statute, the term of imprisonment for aggravated identify theft is two years to be imposed consecutively to any other term of imprisonment for certain enumerated offenses, including, as relevant here, bank fraud. 18 U.S.C. §§ 1028A(a)(1), (b)(2).

[2] Benreuben also objected to the PSR's calculation of the actual and intended loss amounts on the basis that the calculations improperly included certain losses that were not attributable to Benreuben. In response, the government recalculated the loss amounts and the parties stipulated that the intended loss amount was approximately $608,000 (which would still result in a fourteen-level enhancement under U.S.S.G.

Benreuben did not challenge the two-level enhancement for possession of device-making equipment under U.S.S.G. § 2B1.1(b)(11)(A). With respect to the objection to the loss-amount enhancement, the district court rejected Benreuben's argument and applied the fourteen-level enhancement based on the intended loss amount of approximately $608,000, rather than the actual loss amount. With respect to his remaining objections, the district court concluded that a three-level leadership enhancement applied, rather than a four-level enhancement, and that a downward departure was warranted from criminal history category V to category IV. Accordingly, the district court determined that the total offense level was 23, which, with criminal history category IV, resulted in an advisory Guidelines range of 70 to 87 months' imprisonment, to be followed by a mandatory consecutive term of 24 months' imprisonment on Count Three. After calculating the Sentencing Guidelines range, the district court weighed the relevant sentencing factors, pursuant to 18 U.S.C. § 3553(a), and principally imposed a below-Guidelines sentence of 54 months' imprisonment on Counts One and Two, to run concurrently to each other, and 24 months' imprisonment on Count Three, to run consecutively to the other counts, for a total term of 78 months' imprisonment.

On appeal, Benreuben argues his sentence is procedurally unreasonable because the district court erred in calculating the applicable Guidelines range as a result of incorrectly applying a fourteen-level enhancement for intended, rather than actual, loss under U.S.S.G. § 2B1.1(b)(1), and a two-level enhancement for the use of device-making equipment under U.S.S.G. § 2B1.1(b)(11)(A)(i).

_____

§ 2B1.1(b)(1)(H)) and the actual loss amount was approximately $101,000 (which would result in an eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E)). The district court accepted these amounts at sentencing, and they are not challenged by Benreuben on appeal.

A sentence is procedurally unreasonable if, *inter alia*, "the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation marks and citation omitted). We generally review the procedural reasonableness of a sentence for abuse of discretion but, in doing so, we conduct a *de novo* review of the district court's application of the Sentencing Guidelines. *United States v. Solis*, 18 F.4th 395, 401 (2d Cir. 2021). If, however, a defendant fails to object to an alleged procedural error before the district court, we review the decision for plain error. *United States v. Davis*, 82 F.4th 190, 196 (2d Cir. 2023). To establish plain error an appellant must show: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

## I.       Loss Amount Under U.S.S.G. § 2B1.1(b)(1)

Benreuben asserts that the district court committed a procedural error by applying a fourteen-level enhancement, rather than an eight-level enhancement, under U.S.S.G. § 2B1.1(b)(1) based on the intended, rather than actual, loss amount. The 2023 version of the Guidelines in effect at the time of Benreuben's sentence, upon which the district court relied, did not define "loss" in the text of Section 2B1.1(b)(1) itself. Instead, the term was defined in Application Note 3 of the Guidelines commentary, which defined "loss [as] the greater of actual loss or intended loss."[3] U.S.S.G. § 2B1.1 app. n.3(A) (2023). Benreuben argues that the Application Note defining loss is not entitled to deference, under *Kisor v. Wilkie*, 588 U.S. 558 (2019), because the Guideline itself

---

[3] We note that the November 1, 2024 edition of the Guidelines removed the definition of "loss" from Application Note 3 and inserted it into the text of Section 2B1.1. *See* U.S.S.G. § 2B1.1 amend. 827 (2024). Because the government does not argue that this recent amendment should impact the Court's determination, and because we affirm Benreuben's sentence based on the November 1, 2023 Guidelines, we do not consider the effect of that amendment, if any, on this appeal.

is not ambiguous. According to Benreuben, the term "loss," as used in Section 2B1.1(b)(1), unambiguously means actual loss.

Benreuben's argument is foreclosed by our binding precedent. *See United States v. Zheng*, 113 F.4th 280, 299–300 (2d Cir. 2024); *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024). In both *Zheng* and *Rainford*, this Court squarely rejected Benreuben's argument that "loss," as used in Section 2B1.1(b)(1), unambiguously means actual loss. *See* 113 F.4th at 299–300; 110 F.4th at 475. Instead, we concluded that "it was proper for the district court to defer to the Guidelines commentary interpreting 'loss' in § 2B1.1(b)(1)," and to utilize the intended loss amount for purposes of the Guidelines calculation. *Zheng*, 113 F.4th at 300; *see Rainford*, 110 F.4th at 475 (concluding that Application Note 3 is "neither inconsistent with nor a plainly erroneous reading of the guideline"). Indeed, in his reply, Benreuben concedes that "[t]he government is correct when it asserts that this Court's recent decisions in *Rainford* and *Zheng* have now decided the issue raised by [him] in the government's favor" and "the issue he raised is now foreclosed," but he "preserves this issue for further review *en banc* before this Court or on a petition for certiorari before the U.S. Supreme Court," Appellant's Reply at 3. *See United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) ("Published panel decisions [like *Zheng* and *Rainford*] are binding on future panels unless they are reversed *en banc* or by the Supreme Court." (internal quotation marks and citation omitted)). Thus, the district court did not commit procedural error when it applied the fourteen-level enhancement based on the intended, rather than actual, loss amount under Section 2B1.1(b)(1).

## II. Device-Making Equipment Under U.S.S.G. § 2B1.1(b)(11)(A)(i)

Benreuben also argues that the district court committed procedural error when it applied a two-level enhancement for the possession or use of "device-making equipment" under U.S.S.G.

§ 2B1.1(b)(11)(A)(i). In particular, Benreuben contends that the type of device he used to perpetrate the bank fraud, namely, a printer, does not provide a basis for that enhancement. Benreuben failed to raise this argument before the district court, and we therefore review the district court's decision to apply the enhancement for plain error. *See Davis*, 82 F.4th at 196.

To determine whether Benreuben's VersaCheck HP Deskjet printer constitutes "device-making equipment," we begin with the commentary to Section 2B1.1(b)(11)(A)(i), which ascribes "device-making equipment" "the meaning given that term in 18 U.S.C § 1029(e)(6)." U.S.S.G. § 2B1.1(b)(11)(A)(i) app. n.10(A). Section 1029(e)(6), in turn, defines "device-making equipment" as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C § 1029(e)(6). Here, Benreuben used the printer to create fraudulent checks. Thus, whether the printer constitutes "device-making equipment" turns on whether these fraudulent checks constitute "access devices." An "access device" is defined as:

> [A] card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (*other than a transfer originated solely by paper instrument*).

*Id.* § 1029 (e)(1) (emphasis added). "Section 1029 was enacted in 1984 as part of a congressional effort to plug loopholes in federal criminal law in the area of debit and credit cards and to curb the rapid increase in counterfeiting and related fraud with regard to those devices." *United States v. Gugino*, 860 F.2d 546, 549 (2d Cir. 1988). The statute broadly defines "access devices" to include, for instance, account numbers associated with credit and debit cards. *See United States v. Pickett*, 612 F.3d 147, 148 n.1 (2d Cir. 2010). However, the statutory definition explicitly excludes devices used to initiate fund transfers that "originated solely by paper instrument." 18 U.S.C. § 1029(e)(1).

7

As we have previously explained, "this exception . . . applies to passing bad or forged checks." *United States v. Caputo*, 808 F.2d 963, 966 (2d Cir. 1987); *see also United States v. Abozid*, 257 F.3d 191, 197 (2d Cir. 2001).

Here, as noted above, the record indicates that Benreuben only used the VersaCheck HP Deskjet printer to create forged paper checks, which were then used to initiate fund transfers to the co-conspirators' bank accounts. Thus, Benreuben argues, the printer does not qualify as "device-making equipment," under Section 2B1.1(b)(11)(A)(i), because it is not designed or primarily used for the creation of access devices. Based upon our precedent, the government acknowledges that the two-level enhancement for device-making equipment "was likely applied in error" by the district court under these facts. Appellee's Br. at 14. The government nevertheless argues that Benreuben fails to satisfy the plain error standard because, even assuming *arguendo* that the error was clear or obvious, it did not affect his substantial rights. *Davis*, 82 F.4th at 196. We agree.

"An error affects the defendant's substantial rights when it is prejudicial—that is, when there is a reasonable probability that the error affected the outcome of the proceeding." *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020) (internal quotation marks and citation omitted). In this case, the error did not affect Benreuben's substantial rights because the district court made abundantly clear that it would have imposed the same sentence under the Section 3553(a) factors regardless of the Guidelines range. To be sure, we start from the premise that a "court's reliance on an incorrect [Guidelines] range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016); *see also id.* at 198 ("When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."). However, "[t]he record in a case may show . . . that the district court thought

the sentence it chose was appropriate irrespective of the Guidelines range." *Id.* at 200. Thus, when a court "based the sentence [it] selected on factors independent of the Guidelines," an error in the Guidelines calculation may not have had a reasonable probability of affecting the sentence. *Id.*

That is precisely the situation here. The district court repeatedly explained that it based Benreuben's sentence on the Section 3553(a) factors, irrespective of the calculation of the Sentencing Guidelines range, and explained in detail the reasons underlying that determination. For instance, the district court began the sentencing proceeding by noting that "the guidelines are absurd, irrational, and deflect a court from what should be the Court's primary focus, which is where to sentence a defendant under Section 3553(a) of title 18." App'x at 182–83; *see id.* at 191 ("*So I can say with total honesty and sincerity about almost everything about the guidelines*, [the loss amount dispute] will have no effect on my sentencing." (emphasis added)). Moreover, after the district court explained its decision under the Section 3553(a) factors and pronounced its sentence, the government asked the court whether it would have imposed the same sentence had it accepted Benreuben's proposed Guidelines calculation. The district court responded, "[a]bsolutely," and noted that, although in some instances the Second Circuit has found that mistakes in the district court's Guidelines range could have "totally changed" the sentence imposed in a particular case, such a possibility "certainly [was] not true in this case" and "certainly [was] not true of this judge." *Id.* at 213–14. The district court further emphasized that "the essence of this case lies [in the fact that the defendant] has been a serious criminal already, but there is hope to turn him around. And it was balancing those factors that weighed with the Court, *nothing about the guidelines*." *Id.* at 214 (emphasis added).

The district court could not have more clearly expressed that "the sentence it chose was appropriate irrespective of the Guidelines range." *Molina-Martinez*, 578 U.S. at 200. Indeed, the

9

54-month sentence imposed on Counts One and Two was still below the advisory Guidelines range of 57 to 71 months' imprisonment that would have applied even if the two-level enhancement for device-making equipment had not been imposed. In short, this record leaves no "reasonable probability" that the district court would have imposed a different sentence had the total offense level on Counts One and Two been lowered by two levels, and thus any error with respect to the application of that enhancement did not affect Benreuben's substantial rights. *See Dussard*, 967 F.3d at 156; *see also United States v. Lopez*, 768 F. App'x 19, 21 (2d Cir. 2019) (summary order) (concluding that a miscalculation did not affect the defendant's substantial rights when the district court stated that its sentence was "consistent with but not driven by the guidelines" and that it believed a lower sentence "would be just wrong regardless of the guidelines" (internal quotation marks and citation omitted)); *United States v. Leon*, 700 F. App'x 38, 43 (2d Cir. 2017) (summary order) ("[T]he Government pointed us to an unequivocal statement by the District Court that defeats any claim of prejudice resulting from the purported error in applying the [Guidelines] enhancement."). Therefore, Benreuben has failed to satisfy the plain error standard.

\* \* \*

We have considered Benreuben's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10